| | | |
|---|---|---|
| KENNETH WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 C 1590 |
| SUNITA WILLIAMSON, MD; ELIZABETH | ) | |
| FELDMAN, MD; DIANE WASHINGTON, | ) | Judge Rebecca R. Pallmeyer |
| LPN; SUSAN SHEBEL, RN; MARIO T. | ) | |
| MANNEY, Correctional Officer, Commander; | ) | |
| STEPHAN VIVADO, Correctional Officer, | ) | |
| Lieutenant; BLIVEL, Correctional Officer, | ) | |
| Sergeant; WALSH, Correctional Officer; | ) | |
| and, CONNIE MENNELLA, MD, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kenneth Williams is an inmate at the Cook County Jail. On August 11, 2015, Williams fell and injured his wrist while playing basketball in Division 10 of the Jail. Williams immediately requested medical care, and the next day, an employee of Cermak Health Services took x-rays of his wrist. Over the next two weeks, Williams experienced pain and repeatedly requested medical care, eventually undergoing surgery on August 25, 2015 for a wrist fracture.

A year and a half later, Williams filed a *pro se* complaint against Officer Mario Manney, Nurse Diane Washington, Nurse Susan Shebel, the Superintendent of Division 10 of the Cook County Jail, Cermak Health Services, and unidentified jail medical staff for their responses to and treatment of his injury. Now represented by counsel, Williams has amended his complaint to include the original named Defendants, as well as Dr. Sunita Williamson, Dr. Elizabeth Feldman, Dr. Connie Mennella, Correctional Officer ("Officer") Stephan Vivado, Lieutenant Blivel, and Superintendent Walsh.[1]

---

[1]     No party provides first names for Officer Blivel or Superintendent Walsh.

Williams brings his claim under 42 U.S.C. § 1983, alleging that all Defendants, except for Dr. Mennella, were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Williams additionally sues Dr. Mennella in her official capacity as medical director of Cermak Health Services for maintaining policies and practices that led to the violation of his Eighth Amendment rights. All Defendants but Lieutenant Blivel move to dismiss the Fourth Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6).

## BACKGROUND

When ruling on a 12(b)(6) motion to dismiss, the court assumes that "all well-pleaded allegations are true and draw[s] all reasonable inferences in the light most favorable to the plaintiff." *Manistee Apartments, LLC v. City of Chicago*, 844 F.3d 630, 633 (7th Cir. 2016). The court may consider "the complaint itself," as well as "documents attached to the complaint" and "additional facts set forth in . . . [the Plaintiff's] briefs, so long as those facts are 'consistent with the pleadings.'" *Phillips v. Prudential Ins. Co. Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)).

### I. Factual Background

Plaintiff Williams was incarcerated in the Cook County Jail ("the Jail") on February 12, 2013. At approximately 4:00 p.m. on August 11, 2015, he fell and injured his wrist while playing basketball in Division 10 of the Jail. (Fourth Am. Compl. [67] at ¶¶ 1, 16.) He asked Defendant Officer Mario Manney and Defendant LPN[2] Diane Washington to "get him immediate medical care for his fractured wrist," but they "refused to render treatment or seek medical care" for him. (*Id.* at ¶ 17.) Nearly three hours later, Williams requested the help of the Officer who relieved Officer Manney, and Plaintiff went to the infirmary at 6:51 p.m. (*Id.* at ¶ 18.) At 7:52 p.m., Williams was

---

[2] The parties do not define the term, but the court takes judicial notice that LPN typically refers to a licensed practical nurse.

taken to Cermak Health Services, "which provides healthcare to all of the detainees at the Cook County Jail." (*Id.* at ¶¶ 8, 19.) Defendant Dr. Connie Mennella is the medical director at Cermak.

At 4:30 a.m. the next day, Defendant Dr. Sunita Williamson evaluated Williams. (*Id.* at ¶ 20.) She ordered x-rays of his wrist and prescribed ibuprofen. (*Id.*) The x-rays were taken at 10:42 a.m. that same morning, and were reviewed by Defendant Dr. Elizabeth Feldman at around 8:12 p.m. that evening. (*Id.* at ¶¶ 21–22.) The Fourth Amended Complaint does not specify who diagnosed Williams, but it does assert that the x-rays "revealed a transscaphoid perilunate dislocation with an ulnar styloid fracture."[3] (*Id.* at ¶ 21.) Dr. Feldman "ordered a splint" and noted that she would "send [Williams] to ortho hand." (*Id.* at ¶ 22.) It seems that Williams was subsequently returned to the Jail with a prescription for ibuprofen and a splint. (*See id.* at ¶ 1 (stating that Plaintiff "only received ibuprofen and a splint").) *But see id.* at ¶ 27 ("From August 11, 2015 to August 19, 2015 the plaintiff did not receive any pain medication and did not receive appropriate treatment for his fractured wrist."). Plaintiff did not see an orthopedist at that time.

Upon his return to the Jail, Williams remained in pain. On August 13, he "completed a health service request form stating that . . . he needed something stronger [than ibuprofen] to relieve his pain." (*Id.* at ¶ 25.) He received no new care or treatment, however. He again submitted a health service request on August 18, and on August 19, he "was seen at Cermak Health Services by a physician assistant." (*Id.* at ¶¶ 26, 28.) The physician assistant "reviewed the x-rays taken on August 12, 2015, ordered a CT scan to be performed, and referred the [P]laintiff to be seen by an orthopedic hand specialist." (*Id.* at ¶ 28.) Another doctor prescribed him pain medication and read the CT scan results, which confirmed the fracture. (*Id.* at ¶ 29.)

---

[3] It is not clear from the Fourth Amended Complaint that Williams was so diagnosed at the time the x-rays were first reviewed. Williams alleges that on August 19, when he returned to Cermak, he was seen by a different doctor (not named in the complaint); that doctor "prescribed pain medication . . . and the CT scan confirmed that the [P]laintiff was suffering from a transscaphoid perilunate dislocation with an ulnar styloid fracture." (Fourth Am. Compl. [67] at ¶ 29.)

Williams saw an orthopedic hand specialist that same day who told him that "he [had] suffered a significant injury to his wrist that required surgery as soon as possible." (*Id.* at ¶ 30.)

On August 25, Williams "underwent an open reduction internal fixation and right carpal tunnel release," after waiting "15 hours for surgery at Stroger hospital without any medication and food." (*Id.* at ¶¶ 30, 31.) After surgery, Williams asserts that he "did not receive pain medication or appropriate follow up care." (*Id.* at ¶ 1.) The pins from Williams' wrist surgery were removed on October 28, 2015, in a subsequent surgical procedure. (*Id.* at ¶ 43.) Williams asserts that, overall, he continued to be denied medical care until February 16, 2016.[4] (*Id.* at ¶ 44.) During that time, he claims that he was denied physical therapy and pain medication, and he alleges that he suffered permanent injury from the pattern of care. (*Id.* at ¶¶ 44, 65.)

Williams filed several grievances regarding his medical care, both prior to and following his surgery.[5] (*Id.* at ¶¶ 32, 33.) Defendant Nurse Susan Shebel "held the position of clinical performance improvement analyst," and was in charge of investigating these grievances. (*Id.* at ¶ 34.) Williams alleges that Shebel ignored "and/or failed to properly investigate" those grievances, while also "allow[ing] the medical staff to ignore" his care requests. (*Id.* at ¶¶ 35, 36.) Williams also filed grievances and appeals against Defendant Officer Manney for his "refusal to process [Williams'] medical requests and/or take the [P]laintiff to the infirmary." (*Id.* at ¶ 37.) Williams filed a follow-up grievance against Officer Manney after Manney allegedly confronted Williams about the prior grievance. (*Id.* at ¶ 38.)

Plaintiff finally claims that "Defendants Commander Stephan Vivado, Sergeant Walsh, and Lieutenant Blivel failed to respond to" his grievances against Officer Manney and ignored his requests for medical care. (*Id.* at ¶¶ 40, 41.) Plaintiff states that these same three individuals

---

[4]     The reason for this particular date is not clear.

[5]     Plaintiff Williams attached a series of grievances as exhibits to his original *pro se* Complaint [5].

had him transferred to a jail in Kankakee County in October 2015, where he was further denied medical care.  (*Id.* at ¶¶ 41, 42.)  Between August 2015 and the present, Williams has been "repeatedly transferred between various Cook County Jail facilities, Kankakee County Jail, and Livingston County Jail."  (*Id.* at ¶ 52.)

## II.    Procedural Background

Williams filed his initial Complaint [5] *pro se* on March 9, 2017.  That Complaint named as Defendants Officer Manney, Nurse Washington, Cermak Health Services, Nurse Shebel, "Unknown Jail Medical Staff," and the "Supt. of Div. 10."[6]  On May 30, 2017, the court received Williams' Amended Complaint [16], also filed *pro se*.   However, the Amended Complaint was rejected by the court pursuant to the 28 U.S.C. § 1915A screening provision: the Amended Complaint added several new Defendants in its caption, but mentioned only one of those new Defendants in the body of the Amended Complaint, and did not state a claim against that new Defendant.  [20].  Plaintiff submitted that same complaint again months later, and, again, the court declined to file it.   Then on October 6, 2017, an attorney appeared on Plaintiff's behalf.   A few weeks later, on November 28, 2017, counsel filed a Third Amended Complaint [52] naming Dr. Williamson, Dr. Feldman, Dr. Mennella, Nurse Washington, Nurse Shebel, Officer Manney, Commander Vivado, Lieutenant Blivel, and Superintendent Walsh as Defendants.   Months later, counsel filed yet another complaint, the Fourth Amended Complaint [67], on May 3, 2018, naming the same Defendants.   Pursuant to 42 U.S.C. § 1983, Mr. Williams claims that the Jail staff and medical team were deliberately indifferent to his medical condition in violation of his Eighth and Fourteenth Amendment rights, and that Cermak, through Dr. Mennella, had policies and practices that caused the violation of those same rights.

---

[6]       The court understands Supt. to stand for Superintendent.

All Defendants, with the exception of Lieutenant Blivel,[7] move to dismiss the claims against them. (Defs.' MTD [69].) First, the five Defendants who were not named in Williams' original Complaint [5] argue that the claims against them are time-barred. Second, four Defendants argue that the Fourth Amended Complaint [67] fails to state a claim against them in their individual capacity. Finally, Dr. Mennella argues that Plaintiff Williams fails to state a claim against her under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). Defendants' motion is granted in part and denied in part.

## DISCUSSION

### I. Timeliness

Dr. Williamson, Dr. Feldman, Dr. Mennella, Officer Vivado, and Superintendent Walsh move to dismiss the claims against them as untimely, arguing that the statute of limitations had run before Williams added them as Defendants. For claims brought under 42 U.S.C. § 1983, the limitations period is set by the law of the forum state. *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015). In Illinois, it is set at two years. *See id.*; 735 ILL. COMP. STAT. 5/13-202. Defendants assert, and Williams does not dispute, that causes of action accrued against these Defendants between August and October of 2015. (*See* Defs.' MTD [69] at 4–5; Pl.'s Resp. to Defs.' MTD [73] at 5.) Thus, claims against these Defendants remained live until, at latest, October 2017.

The original Complaint in this action was filed on March 9, 2017. (Compl. [5].) It did not name Williamson, Feldman, Mennella, Vivado, or Walsh. (*Id.*) On May 30, 2017, Williams attempted to file a Second Amended Complaint that added Williamson and Vivado as Defendants,

---

[7]  Officer Blivel appears to be unrepresented. No attorney has entered an appearance on his/her behalf, and he/she has filed no response to any of Plaintiff Williams' complaints. (*See, e.g.*, Defs.' MTD [69] at 1 (moving on behalf of all Defendants except for Officer Blivel).) This lack of an appearance is made more confusing by Attorney Anthony Zecchin's recent motion to withdraw as counsel for Defendants, including Blivel [78]. The attorney who filed a new appearance on behalf of Defendants again did not file to appear on behalf of Blivel [81]. The time for filing a responsive pleading has passed. FED. R. CIV. P. 12(b)(6).

but the court rejected it under 28 U.S.C. § 1915A. (Order of June 14, 2017 [20].) Thereafter, on November 8, 2017, Williams filed a Third Amended Complaint naming Williamson, Feldman, Mennella, Vivado, and Walsh as Defendants. (Third Am. Compl. [52].) Williams does not contest that, as of that date, claims against each of these five Defendants were no longer live. (*See* Pl.'s Resp. to Defs.' MTD [73] at 4–7.) Rather, Williams' sole argument as to timeliness is that the amendment adding these Defendants relates back to March 9, 2017, when the original Complaint was filed. (*Id.*)

Federal Rule of Civil Procedure 15(c)(1) sets out several circumstances in which an amendment will "relate back" to the date of an original pleading. Principally, 15(c)(1)(A) allows relation back when "the law that provides the applicable statute of limitations allows relation back." FED. R. CIV. P. 15(c)(1)(A). Alternatively, where an amendment changes the party against whom a claim is asserted, 15(c)(1)(C) permits relation back "if, within the period allotted in Federal Rule of Civil Procedure 4(m) for service of process [120 days], the new defendant 'received such notice of the action that it will not be prejudiced in defending on the merits' and also 'knew or should have known that the action would have been brought against it.'" *Keller v. United States*, 444 F. App'x 909, 911 (7th Cir. 2011) (quoting FED. R. CIV. P. 15(c)(1)(C)).

As the statute of limitations for Section 1983 actions is set by Illinois state law, Williams contends that Rule 15(c)(1)(A) requires only that he satisfy the prongs of the Illinois relation-back rule, 735 ILL. COMP. STAT. 5/2-616(d). (Pl.'s Resp. to Defs.' MTD [73] at 4.) Although Defendants do not expressly contest application of this rule, they frame their response as one opposing relation back under 15(c)(1)(C), as the "Illinois . . . relation-back rule . . . is functionally identical to Rule 15(c)." *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 751 (7th Cir. 2005). *See also Owens v. VHS Acquisition Subsidiary No. 3, Inc.*, 2017 IL App. (1st) 161709, ¶ 27, 78 N.E.3d 470, 479 (explaining that, "due to the similarities between section 2-616(d) and Rule 15(c), Illinois courts have looked to federal precedent interpreting Rule 15(c)(1)(C) for guidance in interpreting section 2-616(d)") (internal quotation marks and citation omitted).

Given the similarities between the state and federal rules, the court "need not fret over fine points" differentiating the two. *Schorsch*, 417 F.3d at 751. Other courts in this district, faced with this issue, have opted to rely on jurisprudence governing the federal rule to determine whether an amendment relates back. *See, e.g.*, *Mock v. Dart*, No. 14 CV 3273, 2015 WL 6153666, at *4 (N.D. Ill. Oct. 19, 2015) (applying Rule 15(c)(1)(C) to a Section 1983 claim, where the plaintiff named two additional defendants after the statute of limitations had expired); *Moore v. Cuomo*, No. 14 C 9313, 2018 WL 4095101, at *4–*5 (N.D. Ill. Aug. 28, 2018) (analyzing the relation back of an amendment adding two defendants under both § 5/2-616(d) and Rule 15(c)(1)(C)); *Gurley v. City of Chicago*, No. 07 C 3987, 2009 WL 2601301, at *2–*3 (N.D. Ill. Aug. 21, 2009) (proceeding under Rule 15(c)(1)(C) in a Section 1983 case).[8]

The Supreme Court issued guidance concerning Rule 15(c)(1)(C) in *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010), where a passenger injured on a cruise ship sued "Costa Cruise Lines," the entity which issued her cruise ticket, rather than Costa Crociere, the cruise line carrier. The plaintiff in *Krupski* amended her complaint to name Costa Crociere after

---

[8]     The Seventh Circuit has not explicitly ruled on this issue. *Compare McRoy v. Sheahan*, 325 F. App'x 433, 434 (7th Cir. 2009) (turning to § 5/2-616(b) of the Illinois relation-back statute to determine whether a new complaint with new claims relates back to the date of the original complaint) *with Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (finding that the lower court did not abuse its discretion when it permitted the relation back of a new claim in an amended § 1983 complaint under Rule 15(c)). But the Circuit has noted that district courts "may be guided by both federal *and* state relation back rules." *Hahn v. Walsh*, 762 F.3d 617, 635 n.37 (7th Cir. 2014) (emphasis added) (explaining that a lower court, on remand, could consider "either Illinois law . . . or Federal Rule of Civil Procedure 15(c)(1)(B)" in determining whether a wrongful death claim could be amended to a complaint after the claim's statute of limitations had expired); *see also Gurley v. City of Chicago*, No. 07 C 3987, 2009 WL 2601301, at *2–*3 (N.D. Ill. Aug. 21, 2009) (noting that "if state law is more favorable than the provisions of Rule 15(c), state law governs," and then determining that "[b]ecause § 616(d) is not more favorable to Gurley, Rule 15(c)(1)(C) applies").

At least one Court of Appeals, the Ninth, has more explicitly held that when "the limitations period derives from state law, Rule 15(c)(1) requires us to consider both federal and state law and employ whichever affords the 'more permissive' relation back standard." *Butler v. National Cmty. Renaissance of California*, 766 F.3d 1191, 1201 (9th Cir. 2014). In that case, a plaintiff added defendants to her complaint after the statute of limitations had run. The Ninth Circuit proceeded by analyzing both California law and Rule 15(c)(1)(C) and affirmed the lower court's finding that neither rule permitted relation back.

the statute of limitations had expired, and the court dismissed it. The Supreme Court reversed that ruling, recognizing that Costa Crociere, the correct defendant, "should have known that [plaintiff's] failure to name it as a defendant in her original complaint was due to a mistake concerning the proper party's identity," and that Costa Crociere was on notice that it was the appropriate party to be named. *Krupski*, 560 at 557. As our Court of Appeals understands *Krupski*, it limits the inquiry in determining whether Rule 15(c)(1)(C) permits relation back to two questions: (1) whether, within the Rule 4(m) 120-day period for service after a complaint is filed, the newly named defendant "knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant"; and (2) "whether, even if so, the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend himself." *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 559–60 (7th Cir. 2011); *Krupski*, 560 U.S. at 548.

In this case, the 120-day time limit for service of process began running on March 9, 2017, when Williams' application for leave to proceed *in forma pauperis* was granted. (Order of Mar. 9, 2017 [4]). *See Keller v. United States*, 444 F. App'x 909, 912 (7th Cir. 2011). For an amendment adding a party to relate back to that date, Williams must show that that the party knew or should have known within 120 days (by July 7, 2017) that, but for a mistake, it would have been included in the original Complaint.

Williams first argues that because all five Defendants are now represented by the Cook County State's Attorney's Office, the court should presume that defense counsel "would have necessarily contacted those not named as defendants, but who are otherwise identifiable from the conduct alleged." (Pl.'s Resp. to Defs.' MTD [73] at 5.) Williams cites no legal authority for this proposition. Other circuits have identified this as the "shared attorney" method of imputing notice, through which "the defendant to be added is deemed to have received timely notice of the plaintiff's claims because that person is currently being represented by the particular attorney who represents an originally named defendant." *Davenport v. Dovgin*, 545 F. App'x 535, 539 (7th Cir.

2013) (citing *Garvin v. City of Philadelphia*, 354 F.3d 215, 222–23 (3d. Cir. 2003)). This method requires the shared attorney to have represented the additional parties *within the Rule 4(m) period*, however. *Davenport*, 545 F. App'x at 539. Here, the court is aware of no allegation that the State's Attorney's Office contacted or began representing any of the five later-named Defendants before the Rule 4(m) period had passed. Thus, even if the court were to use the "shared attorney" rubric, it would not support relation-back in this case. *See Stanek v. Saint Charles Cmty. Unit Sch. Dist No. 303*, No. 13-CV-3106, 2017 WL 5971985, at *4 (N.D. Ill. Dec. 1, 2017). Because there is no basis for finding that Defendants Williamson, Feldman, Vivado, or Walsh actually saw the original Complaint, the court cannot agree with Plaintiff that they could have somehow have inferred their intended involvement from reading the Complaint.[9]

There is similarly no reason to believe that Defendant Mennella was put on notice by the inclusion of Cermak Health Services in the original Complaint. Cermak was dismissed on the same day the original Complaint was filed, and thus was never issued a summons or subpoenaed. (Order of March 9, 2017 [4].) Williams has not identified any basis for believing that Cermak was informed of this lawsuit prior to the Third Amended Complaint, and thus his argument that Cermak's knowledge can be imputed to Mennella misses the issue. Because there is no indication that Mennella "knew or should have known" about the case within the Rule 4(m) period,

---

[9]     Not all of the Defendants are identifiable in the original Complaint, moreover. Consider, for example, Dr. Sunita Williamson. Williamson, an employee of Cermak Health Services, evaluated Williams the morning after his injury, prescribed ibuprofen, and ordered x-rays. (Fourth Am. Compl. [67] ¶ 20.) In the original Complaint, Plaintiff does not describe any actor whose conduct would be fairly attributable to her. (Compl. [5].) The only doctor mentioned in the original Complaint is one "who reviewed the x-rays and concluded that [Williams'] injury had been made worse by the delay of treatment, the continued movement of his wrist prior to surgery, and the delay in scheduling surgery." (*Id.* at 5.) In the Third and Fourth Amended Complaints, however, there is no allegation that Williamson ever reviewed x-rays, only that she ordered them; for this reason, the individual described in the original Complaint is plainly not Williamson. Even if Williamson had been shown that original Complaint, there is nothing in its content that would allow a reasonable inference that Williamson would have been named as a defendant but for a mistake.

Williams has not shown that the amendment adding Mennella should relate back to the date of the original Complaint.

Williams further argues that the court can infer that Defendants Williamson, Walsh, and Vivado were given notice of the lawsuit upon the filing of the Second Amended Complaint on May 30, 2017, which named each of them as Defendants. (Second Am. Compl. [16].) The court rejected the Second Amended Complaint after screening it under 28 U.S.C. § 1915A, however, and Williams identifies no evidence that any of these Defendants were served or informed about it. This problem similarly undermines Williams' assertion that the inclusion of Williamson in the Second Amended Complaint would have permitted Feldman to draw an inference that she should have been named as well. It is not enough for Williams to allege that, had these Defendants known about the Second Amended Complaint, they would have been on notice, because there is little reason to believe that any of them were aware of it at all. *See Stanek*, 2017 WL 5971985, at *5 (holding that relation back was not warranted where there was "no indication that [the defendants] knew or should have known of the action, let alone that Plaintiffs were mistaken in not suing them as well," and dismissing claims against the defendants on statute of limitations grounds).

Williams alternatively asserts that Illinois law expands the relevant time period beyond the 120 days for service of process under Federal Rule of Civil Procedure 4(m), to a longer, more flexible period authorized by Illinois Supreme Court Rule 103(b). He argues that, in these circumstances, Rule 103(b) would permit notice at least 264 days after the filing of the original Complaint, such that notice via the Third Amended Complaint would be sufficient to permit relation back.

Illinois Supreme Court Rule 103(b) provides that an action will be dismissed for lack of service if the plaintiff fails to exercise "reasonable diligence in obtaining service." Ill. S. Ct. R. 103(b). Williams cites no case law suggesting that Rule 103(b) applies to a Section 1983 case in these circumstances, but even assuming, *arguendo*, that it does, it would not facilitate relation

back here. A plaintiff has the burden of demonstrating reasonable diligence under Rule 103(b), and determining whether that burden is met is "within the trial court's sound discretion." *Cooperwood v. Farmer*, 315 F.R.D. 493, 497 (N.D. Ill. 2016). The Supreme Court of Illinois has set forth a non-exhaustive list of factors to consider in determining whether a plaintiff was reasonably diligent under Rule 103(b), including "(1) the length of time used to obtain service of process; (2) the activities of plaintiff; (3) plaintiff's knowledge of defendant's location; (4) the ease with which defendant's whereabouts could have been ascertained; (5) actual knowledge on the part of the defendant of pendency of the action as a result of ineffective service; (6) special circumstances which would affect plaintiff's efforts; and (7) actual service on defendant." *Segal v. Sacco*, 136 Ill. 2d 282, 287, 555 N.E.2d 719, 720 (1990).

Williams does not examine the *Segal* factors, nor does he cite any case applying Rule 103(b). He does not discuss his activities during the period of the delay, his knowledge of the additional Defendants' locations throughout the delay, the ease with which he was ultimately able to ascertain their whereabouts, or any special circumstances. He plainly has not carried his burden to demonstrate that he was reasonably diligent for the entirety of the nearly nine-month period separating the filing of the original Complaint from that of the Third Amended Complaint. While the court is empathetic to the difficulties of participating in litigation while incarcerated, Williams, who is now represented by counsel, has not provided the court with any basis to conclude that Rule 103(b) extends the notice period 264 days after the filing of the original Complaint, greater than double the length of the period tolerated in federal court. The Third Amended Complaint, which first provided each of the additional Defendants with notice, came too late.

In summary, Williams has not shown that Williamson, Feldman, Vivado, Walsh, or Mennella were made aware of the lawsuit at any time prior to the filing of the Third Amended Complaint. Because this was well after both the federal and state notice periods had passed, the amendment does not relate back to the filing of the original Complaint, and thus claims against

12

the additional Defendants are barred by the statute of limitations. Claims against Williamson, Feldman, Vivado, Walsh, and Mennella are dismissed.

## II.     Failure to Exhaust Administrative Remedies

Defendants' motion to dismiss claims failure to exhaust administrative remedies as a ground for dismissal of all remaining Defendants. (Defs.' MTD [69] at 2.) This claim is not accompanied by any citation to the Fourth Amended Complaint, any citation to legal authority, or indeed any explanation at all. "Because it is not the obligation of the Court to research and construct legal arguments available to parties, th[is] argument[] [is] waived and warrant[s] no discussion." *United States v. Alden*, 527 F.3d 653, 664 (7th Cir. 2008) (*citing United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.")).

## III.    Failure to State a Claim

To survive a 12(b)(6) motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The statement of the claim must sufficiently give to the defendants 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016) (modification in original) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Plaintiff Williams claims his Eighth Amendment rights were violated when his requests for medical attention were ignored, and when the medical attention he did receive was allegedly inadequate. The Eighth Amendment, incorporated against the states by the Fourteenth Amendment, prohibits prisoners from being subjected to "cruel and unusual punishments." U.S. Const. amend. VIII; *see Robinson v. California*, 370 U.S. 660, 667 (1962). This requires "prison officials [to] ensure that inmates receive adequate food, clothing, shelter, and medical care." *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) (internal quotation marks and citation

omitted).  "Pursuant to 42 U.S.C. § 1983, a prisoner may bring suit against any person who caused a violation of the prisoner's Eighth Amendment rights while acting under color of state law."  *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010).

Since the filing of the motion to dismiss in this case, the Seventh Circuit has explained that for pretrial detainees, such as Williams, a standard of objective reasonableness, not deliberate indifference, governs claims of inadequate medical care in violation of the Constitution. *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018).  After *Miranda*, the inquiry for assessing a due process challenge to a pretrial detainee's medical care involves two steps.  First, the court "asks whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences" of the treatment provided to the prisoner.  *Id.* at 353.  A showing of negligence, or even gross negligence, remains insufficient to establish a violation of the detainee's constitutional rights.  The second step is to determine whether the challenged conduct was objectively reasonable.  "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable."  *McCann v. Ogle Cnty.*, 909 F.3d 881, 886 (7th Cir. 2018) (citing *Miranda*, 900 F.3d at 354).

The parties have briefed Defendants' motion to dismiss Williams' inadequate medical care claims under the "deliberate indifference" standard that had previously governed such claims. That standard requires a pretrial detainee to establish, first, that he suffered from an objectively serious medical condition and, second, that a subjective test is met—that is, that Defendants were deliberately indifferent to his condition.  *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017) (citing *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012)).  That earlier standard imposes a heavier burden on a pretrial detainee than what is outlined in *Miranda*.  Because, as discussed below, the court concludes that Plaintiff's allegations satisfy even that more stringent standard, it

need not examine this change in the law in depth, but notes its relevance for ruling on summary judgment or jury instructions issues.

### A. Manney and Washington

Williams asserts claims against Manney and Washington for deliberate indifference to his medical needs, in violation of the Eighth and Fourteenth Amendments.[10]  Specifically, Williams alleges that after he fell around 4:00 p.m., he asked Manney and Washington to "get him immediate medical care for his fractured wrist."  (Fourth Am. Compl. [67] ¶ 17.)  Viewing this allegation in the light most favorable to Williams, it can reasonably be inferred that Williams told Manney and Washington he thought his wrist was fractured.  According to Williams, Manney and Washington refused to provide or seek medical care.  (*See id.*)  Williams also alleges that Manney and Washington acted "intentionally, with malice and reckless indifference to [his] rights."  (*Id.* at ¶¶ 64, 70; *see also id.* at ¶¶ 60, 68 (alleging that Manney and Washington knew he "was in need of immediate medical care and that he would suffer permanent injury and pain and suffering if he did not receive medical care").)  These allegations are sufficient to establish, in the language of *Miranda*, that Manney and Washington "acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences" of their treatment of Williams.  900 F.3d at 353.

Williams' medical condition was "objectively serious."  *Dixon v. Cnty. of Cook*, 819 F.3d 343, 349 (7th Cir. 2016).  Indeed, although a physician had not yet confirmed that Williams' wrist was fractured, "a lay person would perceive the need for a doctor's attention" even for a potential fracture.  *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008).  Washington, in particular, would have perceived such a need because she is an LNP.  "A delay in treatment" of an objectively serious medical condition "may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."  *McGowan v. Hulick*, 612 F.3d 636, 640 (7th

---

[10]     Defendants do not dispute that Manney and Washington acted under color of state law.

Cir. 2010); *see also Langston v. Peters*, 100 F.3d 1235, 1240–41 (7th Cir. 1996). Defendants concede that Manney and Washington's "failure to respond to [William's] request for medical care" delayed Williams' attempts to obtain care for four hours. (Defs.' MTD [69] at 9.)

Defendants appear to argue that Manney and Washington did not act with deliberate indifference because a four-hour delay "is not unreasonably long" and "there is no indication that the . . . delay led to additional medical issues." (*Id.*) In support of these arguments, Defendants cite *Langston*, in which the Seventh Circuit stated that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed." 100 F.3d at 1240–41 (emphasis in original) (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995)). They also cite *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995), in which the court determined that allegations regarding a "two-hour delay between the time of [plaintiff's] injury and the time he was taken to the hospital" did not state a claim for an Eighth Amendment violation.

Defendants' arguments are unpersuasive. In *Langston*, the Seventh Circuit reviewed a district court's grant of summary judgment for defendants and determined that the plaintiff had "failed to present any evidence" that the alleged delay in treatment caused any "detrimental effect." 100 F.3d at 1241.[11] Williams is not required to present evidence at this stage. What he has alleged is that "[t]he delay in medical treatment" caused him to "suffer a significant injury." (Fourth Am. Compl. [67] ¶ 1; *see also id.* at ¶ 23 (alleging that if the type of dislocation he suffered "is not reduced immediately," the "delay in treatment will cause permanent damage to the wrist").) He alleges that those injuries were a "highly predictable consequence of the failure to provide him immediate medical treatment," and that despite his surgery, he sustained "permanent injuries."

---

[11] In their reply, Defendants cite several other cases for the same proposition they contend *Langston* supports. But in all of those cases, as in *Langston*, the courts were deciding motions for summary judgment or motions for judgment as a matter of law. (*See* Defs.' Reply [74] 6–7 (citing *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013); *Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007); *Beyerbach*, 49 F.3d at 1326; *Martin v. Tyson*, 845 F.2d 1451, 1458 (7th Cir. 1988)).)

(*Id.* at ¶¶ 31, 79.)   These allegations are sufficient at the pleading stage to state a claim for deliberate indifference.   Whether Williams can present evidence that the four-hour delay exacerbated his wrist injury is a matter for another day.

The court's ruling in *Murphy* is not fatal to Williams' claims, either.   In that case (decided before *Miranda*, though that is of no consequence for this analysis), the Seventh Circuit determined that plaintiff failed to state a claim because (1) he had not alleged that defendants delayed his care "in knowing disregard of an excessive risk to his health or well-being"; (2) the complaint indicated that the delay "occurred because the corrections officers needed to get" the Sheriff's "permission to take [plaintiff] to the hospital"; and (3) plaintiff did not allege that his "injury required immediate attention."   *Murphy*, 51 F.3d at 717.   By contrast, as previously referenced, Williams alleges that when Manney and Washington refused to help him get treatment, they knew he would experience a permanent injury and suffer pain if he did not obtain medical care. Furthermore, nothing in Williams' complaint indicates that the four-hour delay occurred because Manney and Washington had to obtain clearance to transfer Williams to a medical facility or resolve other logistical hurdles.   Instead, Williams alleges that both Defendants flatly refused to take his request seriously.   And unlike the plaintiff in *Murphy*, Williams alleges that he needed medical attention immediately.   The court also notes that there is no bright-line rule concerning how long a delay is too long for Eighth Amendment purposes.   Rather, "the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan*, 612 F.3d at 640.   Williams has adequately alleged that his injury was serious, and nothing in his complaint suggests that obtaining treatment right away would have been difficult. For these reasons, Defendants' motion to dismiss Williams' Eighth Amendment claims against Manney and Washington is denied.[12]

---

[12]      In their briefing, Williams and Defendants address the claims against Manney and Washington only as they relate to Manney and Washington's initial refusal to provide <u>or</u> seek medical care for Williams.   Accordingly, the court does not address Williams' other allegations

## B.    Shebel

Williams also asserts a deliberate indifference claim against Shebel, an RN employed at Cermak whose duties included "investigat[ing] grievances filed by inmates." (Fourth Am. Compl. [67] ¶¶ 12, 34.)[13]  Williams alleges that Shebel "deliberately and intentionally" ignored his "request for medical care." (*Id.* at ¶ 63.)  He also alleges that she "deliberately and intentionally" failed to (1) respond to his medical request; (2) assure that he "received appropriate care for his fractured wrist"; (3) "investigate [his] grievances about the lack of medical care"; (4) have him "referred to a specialist"; (5) get him "the appropriate pain medication for his injury"; and (6) "assure that the medical staff was responding to [his] requests for medical treatment that was necessary for [his] injury." (*Id.*)  All the while, Williams alleges that Shebel "[k]new that [he] was not receiving the appropriate medical care for his fractured wrist." (*Id.*)

Defendants argue that Williams fails to state a claim against Shebel because he alleges that Shebel "hindered the grievance process," and challenges to grievance procedures "are not actionable under Section 1983." (Defs.' MTD [69] at 9.)  The court need not address this argument because, as Williams states in his response brief, he is not challenging the grievance process itself. (Pl.'s Resp. to Defs.' MTD [73] at 10.)  Rather, his claim is that Shebel's failure to investigate the grievances "further contributed to the denial of adequate medical treatment." (*Id.*)  As the court understands Williams, he is contending that the grievances put Shebel on notice that he was receiving delayed and inadequate care.  Shebel's failure to ensure that Williams received timely, adequate care constitutes deliberate indifference to his medical needs.

---

regarding Manney, such as that he failed to investigate Williams' grievances and transferred him to another jail "to deny him access to adequate medical care." (Fourth Am. Compl. [67] ¶ 69.) Likewise, the court does not address Williams' other allegations regarding Washington, such as that she "[f]ailed to have [Williams] referred to a specialist" or, as the court understands Williams' Fourth Amended Complaint, failed to ensure that he received continued care after his hospital visits and surgeries. (*See id.* at ¶ 63.)

[13]    Defendants do not dispute that Shebel acted under color of state law.

Defendants challenge this theory only by reiterating the arguments they advanced in contending that the claims against Manney and Washington are deficient. (*See* Defs.' Reply [74] at 6–7.) The court is satisfied that Williams states a claim against Shebel. First, for the reasons already discussed, Williams has sufficiently alleged that his injury was "objectively serious." *Dixon*, 819 F.3d at 349. Second, Williams has sufficiently alleged that Shebel knew of the facts giving rise to his deliberate indifference claim. In other words, she knew that Williams was in pain; that he did not think he was receiving adequate treatment; and that he believed the inadequate treatment was exacerbating his injuries.

In determining that Williams has sufficiently alleged Shebel knew these facts, the court relies in part on Williams' references to health services request forms and grievances in his Fourth Amended Complaint. Specifically, Williams alleges that on August 13 and 18, 2015, he completed health service request forms stating that he needed stronger pain medication. (*See* Fourth Am. Compl. [67] ¶¶ 25–26.) Williams did not receive any pain medication, however, until August 19, 2015. (*See id.* at ¶ 29.) Later, on August 26, 2015, Williams "completed an inmate grievance form indicating that he had to wait 15 hours for surgery . . . without any medication or food." (*Id.* at ¶ 33.) And from August 11, 2015 forward, Williams "filed numerous grievances against the medical staff regarding the refusal to render him medical care and/or prescribe him pain medication." (*Id.* at ¶ 33; *see also id.* at ¶ 37.) Because Shebel's job requires her to review grievances, it is reasonable to infer that she saw the grievances just referenced. Viewing the allegations in the light most favorable to Williams, the court construes "health service request forms" as documents related to the grievance process.

The court also relies, in part, on the grievances that Williams attached to his original Complaint, but not his Fourth Amended Complaint. (*See generally* Compl. [5].) These grievances provide a more complete picture of Williams' allegations against Shebel. In one grievance, Williams states that Manney ignored his initial request for medical care. (*See id.* at PageID 20 (Aug. 11, 2015 grievance).) In others, he states that he was not receiving prescribed pain

medication even though his pain was so bad he could not sleep (*see id.* at PageID 15 (Aug. 21, 2015 grievance)); that he waited fifteen hours for surgery without medication or food (*see id.* at PageID 9 (Aug. 26, 2015 grievance)); that two weeks after his surgery, no one had changed his bandages (*see id.* at PageID 25 (Sept. 9, 2015 grievance)); that someone discontinued his prescriptions for pain medication, or ignored his refill requests, even though he was still in "excruciating" pain (*see id.* at PageID 10, 13, 14 (Sept. 8, Sept. 25, and Oct. 1, 2015 grievances)); and, that, in general, the delays in treatment exacerbated his injury (*see, e.g.*, *id.* at PageID 27 (undated grievance regarding incidents on Aug. 11, 12, and 19, 2015).) Shebel provided written responses to some of the grievances, and in one case, suggested filing a health service request form. (*See, e.g.*, *id.* at PageID 11 (Sept. 9, 2015 response stating, "You have received ongoing care. There was no delay in treatment and surgery was completed."); *id.* at PageID 12 (Oct. 2, 2015 response stating, "Submit a HSRF with specific medication you [illegible] ordered.").)

Finally, in addition to sufficiently alleging Shebel's knowledge of the circumstances just recounted, Williams alleges that Shebel knew he faced a substantial risk of suffering serious harm if she failed to remedy the lapses in care. (*See, e.g.*, Fourth Am. Compl. [67] ¶ 60 (alleging that Shebel knew Williams "was in need of immediate medical care and that he would suffer permanent injury and pain and suffering if he did not receive" it).) Relatedly, he alleges that Shebel failed to act, and did so intentionally, with malice, and with reckless indifference to Williams' rights. (*Id.* at ¶ 64.) And he alleges that Shebel's inaction delayed his treatment, which in turn caused him to suffer "pain and suffering[,] disfigurement and disability." (*Id.* at ¶ 65; *see McGowan*, 612 F.3d at 640; *Langston*, 100 F.3d at 1240–41).)

To summarize, Williams sufficiently alleges that he suffered an objectively serious injury and that Shebel "actually knew of, but disregarded, a substantial risk to [his] health." *Cesal*, 851 F.3d at 721. Accordingly, he has stated a deliberate indifference claim against Shebel, and the court denies Defendants' motion to dismiss her from this action. This ruling is conditioned on

Williams filing a Fifth Amended Complaint that attaches the grievances he included with his original Complaint.

## **<u>CONCLUSION</u>**

Defendants' motion to dismiss [69] is granted in part and denied in part.  The claims against Defendants Williamson, Feldman, Vivado, Walsh, and Mennella are dismissed. Claims against Defendants Manney, Washington, and Shebel will proceed.  A status conference is set for April 15, 2019, at 9:00 a.m.  The parties are encouraged to exchange settlement proposals.


ENTER:


Dated:  March 31, 2019                        _____
                                             REBECCA R. PALLMEYER
                                             United States District Judge